UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>)<br>v.                                      )    CRIMINAL NO. 04-10008-MLW<br>)<br>)<br>MARIO RUDOLFO CONTRERAS-   )<br>          PALACIOS                  )<br>a/k/a Oscar Rawley                )<br>) | |

GOVERNMENT'S TRIAL BRIEF

The United States of America, by and through its attorneys, United States Attorney Michael J. Sullivan and Assistant United States Attorney Paul R. Moore, respectfully submits this trial brief to assist the Court during the upcoming trial of the above-captioned matter, which is scheduled to commence on January 10, 2005 and is expected to last for approximately two days. The defendant is represented by Leo Sorokin, Esq., of the office of the Federal Public Defender.

There are no outstanding discovery issues.

Summary of Facts

On January 14, 2004, a grand jury sitting in this district returned a one count Indictment charging Mario Rudolfo Contreras-Palacios (hereinafter "defendant") with Unlawful Reentry of a Deported Alien, in violation of Title 18, United States Code, Section 1326.

The defendant's Alien File (hereinafter "A-file") indicates that he has been deported from the United States on eight occasions since 1979 (including three "voluntary" returns).

On the first occasion, January 10, 1979, the defendant was encountered by U.S. Border

Patrol agents near Laredo, Texas. During the subsequent interview, the defendant told agents that he was a citizen of Guatemala and described the precise route he had traveled, beginning on January 2, 1979, from Guatemala through Mexico to the United States' border. After a hearing with an immigration judge, the Immigration and Naturalization Service (hereinafter "INS") contacted the Guatemalan consulate to seek information regarding the defendant's citizenship. In response, Guatemalan authorities confirmed that the defendant was then a citizen of Guatemala and provided a certified copy of his Guatemalan birth certificate.

Subsequent to that occasion in 1979, the defendant was found in the United States (having entered, on each occasion, without permission from the Attorney General or the Secretary of the Department of Homeland Security) in 1982, 1983, 1984, 1989, 1990, 1999 and 2000. He has been twice charged and twice convicted in federal court in the Western District of Texas for the same offense (1984 and 1985) (Title 18, United States Code, Section 1326). He was also charged and convicted for the same offense in federal court in the Southern District of New York (1990).

In the instant matter, the defendant had last been deported from the United States to Guatemala on August 22, 2000. His fingerprint and a photographic image were taken by the INS agent just prior to his actual deportation. He was further issued (another) warning not to return to the United States without having first successfully obtained prior approval from the Attorney General of the United States.

On December 15, 2003, the defendant was arrested for shoplifting in Waltham, Massachusetts, under the name "Oscar Rawley." Subsequent to booking, the Middlesex Sheriff's Office ran a check of the defendant's fingerprints and found that his true identity was

that of the defendant and that he had previously been deported from the United States as an alien. The records indicated that he was then in the U.S. unlawfully and the sheriff's office contacted the successor entity to the INS, the Bureau of Immigration and Customs Enforcement (hereinafter "ICE"). On December 17, 2003, ICE Agent Thomas Carroll (now, the primary case agent) visited the defendant in the sheriff's custody and took the defendant's fingerprints (a full set). Those prints were then immediately forwarded to the Federal Bureau of Investigation's (hereinafter "FBI") Special Processing Center in Clarksburg, West Virginia. There, the FBI ran a check on its national register of prints and found that the prints taken by the agent of the defendant were an identical match to those in its records under the name of the defendant and having previously been assigned an Alien Number ("A 22 931 713"). The existence of an Alien Number indicated to the agent that an A-file was already in existence on this particular defendant. The agent then contacted the ICE office in Buffalo, New York (from where the defendant had last been deported) and arranged for the original A-file to be transferred to the Boston ICE office.

ANTICIPATED EVIDENCE AT TRIAL

    A. ICE A-file Documents:

The ICE case agent and keeper of records will testify that ICE maintains records of aliens in "A-files." An A-file is the official ICE repository for proceedings and/or contacts that an alien has with ICE as well as other state and federal law enforcement agencies. Prior official ICE records contained within the A-file are records of the defendant's deportation ("Warrant of Deportation," "Order to Show Cause," "Reinstatement of Prior Order of Deportation," "Order of the Immigration Judge), among others. In this case, the Government's Proposed Exhibit List

includes each prior Warrant of Deportation.  The government recognizes that while it believes each such document may be admissible, that the Court may consider such a volume of prior orders to be cumulative and, perhaps, prejudicial in effect.  For that reason, the government anticipates moving two of these orders into evidence through the testimony of the ICE agent and keeper of records (Exhibit Nos. 3, 4, 9 and 10).  The testimony of the ICE employees will indicate that these documents were contained in the defendant's A-file and have been so certified by the INS district director.

      B.  Fingerprint Records and Analysis:

The ICE agent who took the defendant's fingerprints on December 17, 2003, will testify that the defendant is, indeed, the person whose prints he took on that date.  The government will then present the testimony of an FBI Fingerprint Examiner to offer his or her expert opinion as to whether or not the prints which were taken by the ICE agent on December 17, 2003, are a match to the prints taken at the time of the defendant's prior deportation (August 22, 2000) (at the moment of this writing, the FBI laboratory is conducted a second analysis which will be promptly provided to the defendant upon receipt and/or notification by the government).  Thus, the government anticipates moving Exhibit Nos. 2 and 5 into evidence at this point in the trial.

      C.  Evidence of Place of Defendant's Birth:

This defendant has indicated recently that he believes his place of birth to have been New Mexico, thus rendering him a citizen of the United States.  The government, in response, will seek to introduce a certified copy of the defendant's Guatemalan Birth Certificate and the State of New Mexico's declaration that its records indicate no birth in that state for the defendant under the name and date of birth he has offered (Exhibit Nos. 18 and 21).

In addition, Guatemala has provided a copy of the defendant's passport which indicates his place of birth (as Guatemala). The government intends to move for introduction of this evidence, as well (Exhibit No. 17).

The government may also propose to this Court that it allow admission of the August 18, 1990, "Judgment in a Criminal Case" against the defendant under an identical charge in the Southern District of New York (Exhibit No. 23). The purpose would be to demonstrate the defendant's alienage and believes that this Court could issue a limiting instruction to the jurors that they consider the prior judgment only for the purposes of establishing the defendant's alien status at the time of that judgment. See *United States v. Bejar-Matrecios*, 618 F.2d 81, 83-84 (9th Cir. 1980).

D. Proof of Deportation:

The defendant's prior deportation (August 22, 2000) from Buffalo, New York, will be established by the associated "Warrant of Deportation" (Exhibit No. 10). See, *United States v.Loyola-Dominguez,* 125 F.3d 1315, 1318 (9th Cir. 1997) (the Warrant of Deportation, Order of the Immigration Judge, and Order to Show Cause, are documents from the A-file and are public records within the meaning of Fed. R. Evid. 803(8); *United States v. Sotello*, 109 F.3d 1446, 1449 (9th Cir. 1997). *United States v. Contreras*, 63 F. 3d 852, 857 (9th Cir. 1995) (the defendant's deportation was witnessed by INS personnel and the defendant's signature and print appeared on the Warrant of Deportation).

E.  Found in the U.S. Without Permission to Re-enter:

Proving that the person before the Court at trial is the same person who was previously deported is essential to the elements. It is also essential that the government demonstrate that the

defendant re-entered without having first obtained either the permission to so re-enter of the Attorney General of the United States (if prior to March 1, 2003) or the Secretary of the Department of Homeland Security (if on or after March 1, 2003). To demonstrate this, the government will offer the testimony of the fingerprint examiner that the person who was deported previously is one and the same as the person now before the Court. Thus, identity should be established.

Further, the Warrant of Deportation includes a photographic image of the person deported on August 22, 2000, and whom the government says was and is the same person as the defendant. As lay persons, the jurors will be qualified to look at the image and compare it to the person in front of them in the courtroom and, thus, aid in forming their own judgments as to identity.

In addition, the government will seek to introduce a "Certificate of Non-Existence" of a record which would indicate that the defendant had sought, at some point, to apply for readmission (the rationale and testimony being that if such permission had sought permission to re-enter, it would be indicated in the A-file) (Exhibit Nos. 2, 5, 10, and an undesignated number). This certified record will indicate that a diligent search of ICE records has been made and that no record or entry can be found indicating that the defendant sought (and was granted) permission to re-enter the U.S (Fed. R. Evid. 803(10)). The primary agent or keeper of records will also attest that he/she has diligently searched the A-file and that there are no documents indicating that the defendant sought permission (and was granted permission) to re-enter the U.S.

## EVIDENTIARY ISSUES

The government believes that the A-file Documents and Conviction Documents are admissible per Fed. R. Evid. 803(8)(A) and (B), 803(22), 902(1) and (4).  The testimony of the primary agent and keeper of records will, presumably, provide the foundational basis for the admissibility of the exhibits to be drawn from the A-file.

These same A-file documents fall within the public records exception to the hearsay rule. *See, United States v. Loyola-Dominguez*, 125 F.3d 1315, 1318 (9th Cir. 1997) (the Warrant of Deportation, Order of the Immigration Judge, and Order to Show Cause, are documents from the A-file and are public records within the meaning of Fed. R. Evid. 803(8)(B).

The government anticipates that it will establish that the defendant's fingerprint as it appears on the prior Warrant(s) of Deportation match the fingerprints taken from him on December 17, 2003 (when he was "found" in the District of Massachusetts); *See United States v. Gilbert,* 774 F.2d 962, 964-65 (9th Cir. 1985) (The routine act of reporting on fingerprints is no different from inventorying items seized.  The act of recording fingerprints is ministerial, objective, and non-evaluative and falls within the public records exception of Rule 803(8)(B).

        Respectfully submitted,

        MICHAEL J. SULLIVAN
        United States Attorney

By:   /s/ Paul R. Moore
Paul R. Moore
      Assistant U.S. Attorney

Dated: December 20, 2004

## CERTIFICATE OF SERVICE

    I hereby certify that a true copy of the above document was served upon the attorney for defendant Mario Rudolfo Contreras-Palacios, Leo Sorokin, Esq., on December 20, 2004 by facsimile.

                                                   /s/ Paul R. Moore
                                                   Paul R. Moore
                                                   Assistant U.S. Attorney