UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.             )<br>)<br>MARIO CONTRERAS-PALACIOS )<br>) | CRIMINAL NO. 04-10008-MLW |

SENTENCING MEMORANDUM OF MARIO CONTRERAS-PALACIOS

Mario Contreras-Palacios respectfully submits this Memorandum in support of his request that the Court sentence him to twenty-four months' incarceration. In part I below, he argues that two years is the applicable statutory maximum under 8 U.S.C. § 1326, because he was not charged with, nor was he found guilty of, prior conviction of a felony. In part II, assuming that the Court does not accept the argument concerning the statutory maximum in part I, the defendant asks the Court to depart downward for two reasons: first, because of the impact that his mental illness had on his commission of the crime, under U.S.S.G. § 5K2.0 (a)(4), and second, because his criminal history category significantly over-represents the seriousness of his criminal history, under U.S.S.G. § 4A1.3. In part III, Mr. Contreras-Palacios addresses the reasons under 18 U.S.C. § 3553 (a) why the Court should impose the requested sentence.

   I. <u>Two years is the applicable statutory maximum under 8 U.S.C. § 1326</u>.

      A. <u>The defendant was not indicted for, nor was he found guilty of, being deported after having been convicted of a felony</u>.

Mr. Contreras-Palacios was convicted of violating 8 U.S.C. § 1326 (a), "Illegal Re-entry of Deported Alien." The indictment alleges that he, "being an alien and having been excluded, deported and removed from the United States..." was found here, "in violation of Title 8, United

States Code, Sections 1326(a) and (b) (2) and Title 6, United States Code, Sections 202 (3) and (4) and Section 557." The indictment does not allege his prior conviction of any crime.

On May 18, 2005, the defendant was convicted at a bench trial of the one-count indictment. At trial, no evidence was presented pertaining to the alleged criminal conviction which forms the basis of the 16 level "bump up" in U.S.S.G. § 2L1.2 (b) (1) (A). (See Presentence Report, p. 8, ¶ (39).)

> B. This Court should find that the defendant cannot be sentenced under 18 U.S.C. §1326 (b) (2) and should sentence him under subsection (a) to no more than two years.

### 1. The Almendarez-Torres decision.

8 U.S.C. § 1326 (a) states that an alien who is deported and reenters shall be imprisoned not more than two years. Section 1326 (b) (2) raises the statutory maximum to twenty years for an alien "whose removal was subsequent to a conviction for commission of an aggravated felony." The statute does not set out the manner or standard of proof required to support the ten-fold increase in the statutory maximum, although the statute does require findings regarding the class of the conviction, the timing relative to removal, and the characteristics that make a felony aggravated under 8 U.S.C. § 1101(a) (43).

In *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), the defendant, having admitted in his guilty plea colloquy that his deportation "had taken place 'pursuant to' three earlier 'convictions' for aggravated felonies," argued that the Fifth Amendment required the prior felony convictions to be charged in the indictment. *Id*. at 227. The Court, in a five to four decision, held that subsection (b) (2) is

> a penalty provision, which simply authorizes a court to increase the sentence for a

recidivist. It does not define a separate crime. Consequently, neither the statute nor the Constitution require the Government to charge the factor that it mentions, an earlier conviction, in the indictment.

*Id*. at 226-227.

In his dissent, Justice Scalia wrote that "the text of the statute supports, if it does not indeed demand, the conclusion that subsection (b) (2) is a separate offense that includes the violation described in subsection (a) but adds the additional element of prior felony conviction." *Id*. at 250. He criticized the majority's ruling that it was constitutionally permissible for "a defendant's sentencing exposure to be increased tenfold on the basis of a fact that is not charged, tried to a jury, and found beyond a reasonable doubt." *Id*. at 260. He questioned why recidivism should be an exception to the rule that a fact which increases maximum permissible punishment must be found by a jury beyond a reasonable doubt: "[T]here is no rational basis for *making* recidivism an exception." *Id.* at 257-258 [emphasis in original]. He concluded that under the doctrine of constitutional avoidance, the Court should have construed section (b) (2) as defining a separate offense that must be charged and proven. *Id*. at 271.[1]

## 2. *Almendarez-Torres* is no longer good law.

Cases decided after *Almendarez-Torres* - *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Ring v. Arizona,* 536 U.S. 584 (2002), *Blakely v. Washington*, 125 S. Ct. 2531 (2004), *United States v. Booker*, 125 S. Ct. 738 (2005), and *Shepard v. United States*, 125 S. Ct. 1254 (2005) - establish that the Sixth Amendment requires factors that increase statutory maximums to be

---

[1] "[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress." *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988).

Case 1:04-cr-10008-MLW    Document 63    Filed 09/12/2005    Page 4 of 12

charged and either proved beyond a reasonable doubt to a fact-finder or admitted as part of a guilty plea. Although the Court has continued to mechanically cite the irrational "exception" to this rule carved out by *Almendarez-Torres*, according to which prior convictions are the only facts increasing statutory maximums that do not need to be charged and proved, a majority of the Court believes that *Almendarez-Torres* was wrongly decided. Under the reasoning of these cases, *Almendarez-Torres* is no longer good law. This Court should utilize the doctrine of constitutional doubt to find that the statute under which the defendant is charged sets out a separate crime in subsection (b) (2). Therefore, since the defendant was not charged, and was not convicted of, the predicate conviction, he cannot be sentenced under that section.[2]

In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." While affirming the questionable holding of *Almendarez-Torres,* the Court tightly limited that case to its facts, noting that *Almendarez-Torres* "represents at best an exceptional departure from the historic practice [of requiring pleading and proof of factors increasing statutory maximums]." 530 U.S. at 484, 487. The Court emphasized that no question regarding jury trial or standard of proof arose in

---

[2] The Supreme Court stated long ago the "one [rule of] universal application, - that every single ingredient of the offence must be accurately and clearly expressed; or, in other words, that the indictment must contain an allegation of every fact which is legally essential to the punishment to be inflicted." *United States v. Reese*, 92 U.S. 214, 232 (1875) (Clifford, J., concurring). This long-standing precedent, solid law before *Almendarez-Torres*, and upheld in case law since *Almendarez-Torres*, indicates that *Almendarez-Torres* is an invalid deviation from the common law and constitutional requirement that all the ingredients necessary for punishment be alleged in an indictment. As the defendant was not indicted for having a specific conviction under 8 U.S.C. § 1326 (b) (2), he cannot now be punished for it.

4

*Almendarez-Torres* and explicitly noted that *Almendarez-Torres* may have been incorrectly decided and should be narrowly applied. *Id*. at 488-489. The Court's lack of confidence in *Almendarez-Torres* was undoubtedly reinforced by the defection of Justice Thomas, who authored a concurring opinion renouncing his swing vote in *Almendarez-Torres*. *Apprendi*, at 520-21 (Thomas, J., concurring).

In *Ring*, the Court addressed the inconsistency between *Apprendi* and *Walton v. Arizona*, 497 U.S. 639 (1990), in which the Court had upheld fact finding by a judge concerning sentencing factors predicate to a death sentence. The Court found that evolving constitutional litigation undermined *Walton*, and overruled that case. The Court specifically quoted Justice Thomas's concurring opinion in *Apprendi*, in which he asserted *Almendarez-Torres* was wrongly decided:

> [I]f the legislature defines some core crime and then provides for increasing the punishment of that crime upon a finding of some aggravating fact [,] ... the core crime and the aggravating fact together constitute an aggravated crime, just as much as grand larceny is an aggravated form of petit larceny. The aggravating fact is an element of the aggravating crime.

*Ring,* 536 U.S. at 605 (quoting *Apprendi*, 530 U.S. at 501 (Thomas, J., concurring)). In reversing *Walton*, the Court stated: "Because Arizona's enumerated aggravating factors operate as 'the functional equivalent of an element of a greater offense,' *Apprendi*, 530 U.S. at 494 n.19..., the Sixth Amendment requires that they be found by a jury." *Ring*, 536 U.S. at 609.

In *Blakely* and *Booker*, the Court held that increases in mandatory guidelines punishment implicated Sixth Amendment rights, but nevertheless quoted *Apprendi* in excluding "the fact of a prior conviction" from its holding that any fact increasing the penalty for a crime beyond the prescribed statutory maximum must be found by a jury beyond a reasonable doubt or admitted to

at a guilty plea. *Blakely*, 124 S. Ct. 2536; *Booker*, 125 S. Ct. at 747. By the time of the *Shepard* decision, however, five months after *Booker*, Justice Thomas openly questioned why the Court adhered to the rule of *Almendarez-Torres*, "which draws an exception to the *Apprendi* line of cases for judicial fact finding that concerns a defendant's prior convictions." *Shepard*, 125 S. Ct. at 1264. Concurring, Justice Thomas stated that *Almendarez-Torres*

> has been eroded by this Court's subsequent Sixth Amendment jurisprudence, and a majority of the Court now recognizes that *Almendarez-Torres* was wrongly decided [citation omitted]. The parties do not request it here, but in an appropriate case, this Court should consider *Almendarez-Torres*' continuing viability. Innumerable criminal defendants have been unconstitutionally sentenced under the flawed rule of *Almendarez-Torres*, despite the fundamental "imperative that the Court maintain absolute fidelity to the protections of the individual afforded by the notice, trial by jury, and beyond-a-reasonable-doubt requirements."

*Id.* at 1264, quoting *Harris v. United States*, 536 U.S. 545, 581-582 (2002) (Thomas, J., dissenting).

In short, the "breadth of the holdings" in the recent cases cited "have in fact overruled" *Almendarez-Torres*. Cf. *United States v. Malouf*, 2005 WL 1398624 (D. Mass.) (*Booker* and *Blakely* have in fact overruled *Harris*). This Court should find that 8 U.S.C. § 1326 (2) (b) sets out a separate crime that was neither charged nor admitted to by the defendant. Therefore Mr. Contreras-Palacios can be sentenced, under subsection (a), to a maximum of two years.

3. <u>Even if Almendarez-Torres survives, it does not apply to this case</u>.

The Court in <u>Almendarez-Torres</u> addressed only the indictment clause of the Fifth Amendment. The defendant admitted during the plea colloquy that his deportation "had taken place 'pursuant to' three earlier 'convictions' for aggravated felonies." *Almendarez-Torres*, 523 U.S. at 227. The Court there expressly disavowed any holding regarding the manner and standard

of proof required to establish the prior aggravated felony. Id. at 248. Here, Mr. Contreras-Palacios was not convicted of having the predicate conviction under subsection (2) (b). Accordingly, even assuming the continuing vitality of *Almendarez-Torres* as a statement of Fifth Amendment law, sentencing him to more than two years violates his Sixth Amendment rights under *Apprendi*, *Blakely*, and *Booker*.

Moreover, the current version of 8 U.S.C. § 1326 differs from that addressed in *Almendarez-Torres*. The statute at issue in *Almendarez-Torres* was simpler: former section 1326 included no reference to removal and created two simple categories of aliens "whose deportation was subsequent to a conviction for commission of a felony (other than an aggravated felony)" and "whose deportation was subsequent to a conviction for commission of an aggravated felony." 8 U.S.C. § 1326(b)(1) and (2) (1988). In addition, the definition of "aggravated felony" under 8 U.S.C. § 1101(a)(43) was less complex than at the time of the *Almendarez-Torres* decision. In 1988, the initial definition included only murder, drug trafficking, and weapons trafficking. Pub. L. No. 100-690, § 7342, 102 Stat. 4469, 4469-70. In 1990, the definition expanded to include crimes of violence for which a term of at least five years imprisonment was imposed. Immigration Act of 1990, Pub. L. No. 101-649, § 501, 104 Stat. 4978, 5048. In 1996, after Mr. Almendarez-Torres's guilty plea, the definition was expanded to cover dozens of potential offenses depending on various characteristics of the offense. 8 U.S.C. § 1101(a) (43) (2000). [3]

---

[3]Some of the offenses involve factors that would not be included in either a judgment or charging documents, such as the amount of loss (8 U.S.C. § 1101(a)(43)(D) and (M)), the purpose of assisting a family member (8 U.S.C. § 1101 (a)(43)(N) and (P)), and factors classifying crimes as "crimes of violence" and drug trafficking crimes. See James P. Fleissner and James S. Shapiro, Sentencing Illegal Aliens Convicted of Reentry After Deportation: A Proposal for Simplified and Principled Sentencing, 8 SENT. RPTR. 243 (March/April 1996) (the

To increase the statutory maximum, 8 U.S.C. § 1326 now requires findings regarding the class of the conviction, the timing relative to removal, and the characteristics that make a felony aggravated under 8 U.S.C. § 1101 (a) (43). However, the statute does not explicitly set out the manner or standard of proof for the increase in the statutory maximum. Compliance with the mandate of *Apprendi* and its progeny require that those facts - facts beyond the mere fact of prior conviction - be proved beyond a reasonable doubt or admitted by the defendant. That has not been done here.

In sum, *Almendarez-Torres* does not apply here because unlike that case, Mr. Contreras-Palacios did not admit, nor was he found guilty of, having the necessary conviction to raise the statutory maximum to twenty years. Under the present statute, the proof concerning the prior conviction is complex and the Court cannot assume the facts necessary to that finding. Not having waived his Sixth Amendment rights to proof of the conviction, Mr. Contreras-Palacios cannot now be punished under the twenty year maximum.

> II.   <u>Mr. Contreras-Palacios should receive a downward departure because his untreated mental illness played a causative role in his commission of the offense and because his criminal history category significantly over-represents the seriousness of his criminal history</u>.

If the Court does not sentence Mr. Contreras-Palacios to twenty-four months in accordance with the argument above in part I, then the defendant asks the Court to depart downward from the applicable Guideline range for two reasons.

First, U.S.S.G. § 5H1.3 states that mental and emotional conditions "are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range,

---

tortuous amendment process has increased the complexity of determining what is an "aggravated felony").

except as provided in Chapter 5, Part K, Subpart 2 (Other Grounds for Departure)." § 5K2.0 (a)(4) states that an offender characteristic identified as "not ordinarily relevant in determining whether a departure is warranted may be relevant to this determination only if such offender characteristic or other circumstance is present to an exceptional degree."

In this case, the defendant's "mental condition" should be considered by this Court as the basis for a downward departure because at the time of the offense, the defendant was suffering from an untreated mental disease that played a causative role in the defendant's commission of the crime.

Mr. Contreras-Palacios refused to submit to a mental health evaluation, however, counsel believes that he suffers from a mental illness. Counsel has observed Mr. Contreras-Palacios to be irrational. He is constantly in trouble in the institution in which he is held because he is paranoid and cannot follow rules. He believes that everyone is working against him. Mr. Contreras-Palacios told counsel that he frequently hears voices "in his head". He said that the voices are "louder" when he is in solitary confinement at Plymouth, which he often is because of his behavior problems.

The defendant also asks the Court to depart downward under U.S.S.G. § 4A1.3, because his criminal history category significantly over-represents the seriousness of his criminal history. The defendant notes that in the Presentence Report he received a total of four points for extremely minor offenses: in ¶ (35), for carrying a dangerous weapon, i.e., "wearing a studded arm band"; ¶ (36), possession of marijuana; ¶ (37), jumping a turnstile in the subway in New York; ¶ (38), shoplifting.

    III. <u>18 U.S.C. § 3553 (a) considerations</u>.

        A. <u>Nature of the offense  (§ 3553 (a) (1))</u>.

Mr. Contreras-Palacios' criminal conduct was non-violent.

        B. <u>History and characteristics of Mr. Contreras-Palacios.<br>(18 U.S.C. §§ 3553 (a) (1) and 3661)</u>.

Mr. Contreras-Palacios is a marginal person with debilitating physical and mental health problems. Evidently, he has no family or friends and no financial resources. Whatever his country of origin or personal history, it is undisputed that he has had a difficult life. He appears to have been homeless for most if not all of his adult life, and has no enduring family ties. He has a limited understanding of English and has had very little formal education. He suffers from diabetes and hepatitis and has serious substance abuse issues.

        C. <u>The need "to protect the public from further crimes of the defendant" (§ 3553 (a) (2) ( c)</u>.

Mr. Contreras-Palacios's criminal history bears all the marks of his being a troublesome vagrant who attracts the attention of local police by shoplifting and wearing studded arm bands. The harm inflicted on the public by bearing the cost of incarcerating him is greater than any harm he might do if released.



        D. <u>The need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense (§ 3553 (a) (2) (A))</u>.

The requested sentence satisfies the above concerns. Mr. Contreras-Palacios has been incarcerated on the present indictment since January 15, 2003 at the Plymouth County Correctional Facility in Plymouth, Massachusetts. It is well-known that federal inmates at Plymouth serve "hard time" there: the inmates do not go outside for recreation; there are no

contact visits with family; visits are of extremely limited duration; there are no educational opportunities; federal inmates may not work; there are no drug programs; and the medical unit is notoriously bad.  For someone who is mentally ill and does not speak English well, the Plymouth County Correctional Facility is an extremely difficult place to navigate.  Mr. Contreras-Palacios has spent an inordinate amount of time at Plymouth on the detention unit, locked in a cell by himself for 24 hours a day without television or radio.

      Because of his status as an illegal alien, whatever sentence the defendant receives will be lengthier and more difficult than if he were a citizen.  First, Mr. Contreras-Palacios was held from December 15, 2003 to January 15, 2003 in ICE custody prior to being transferred to the custody of the United States Marshals in connection with this case.  Then, because of his status as an illegal alien, any time Mr. Contreras-Palacios must serve will be longer and more difficult than if he were a citizen:  as an illegal alien he will be housed in a higher security facility than he might otherwise be and he will not be eligible for a half-way house program at the end of his sentence.  Last, after serving his sentence, he will undoubtedly spend additional months in INS custody awaiting deportation.

      Finally, the length of Mr. Contreras-Palacios' incarceration is affected by another happenstance, which is that he returned to a district that does not have a so-called fast track alternative.  In many districts, a defendant facing an illegal reentry prosecution may plead to lesser charges that cap the defendant's jail term.  The District of Arizona, the Central District of California and the Western District of Washington all have fast track programs, for instance, that provide for a defendant with a prior aggravated felony to have his prison term capped at either 24

or 30 months.[4]  Because the District of Massachusetts does not have such a program, these sentence reductions were not available to Mr. Contreras-Palacios.

    III.  Conclusion

For the reasons set out in part I, above, Mr. Contreras-Palacios asks this Court to find that the maximum sentence he can receive is two years.  For the reasons set out in parts II and III, he asks the Court to sentence him to twenty-four months.

                                   MARIO CONTRERAS-PALACIOS
                                   By his attorney,
                                   /s/ Page Kelley
                                   Page Kelley
                                     B.B.O. #548237
                                   Federal Defender Office
                                   408 Atlantic Avenue, 3rd Floor
                                   Boston, MA  02110
                                   Tel: 617-223-8061

Date: September 12, 2005

---

[4] Counsel's information about fast track programs comes from the sharing of information among Federal Defender Offices: it is based on the reports of the Federal Defender Offices in the mentioned judicial districts.